# RECORD NO. 14-1988

In The

# United States Court Of Appeals

## For The Fourth Circuit

**STANLEY MARVIN CAMPBELL,**
**Trustee in Bankruptcy for ESA Environmental Specialist, Inc.,**
*Plaintiff,*

and

# PROSPECT CAPITAL CORPORATION,

*Plaintiff – Appellant,*

v.

# HOULIHAN SMITH & COMPANY, INC.,

*Defendant – Appellee,*

and

**NATHAN M. BENDER; ADKISSON, SHERBERT & ASSOCIATES; CHARLES J. COLE;
JACOB COLE; SANDRA DEE COLE; DAVID C. EPPLING;
MICHAEL ANTHONY HABOWSKI; TRACEY HAWLEY; JOHN M. MITCHELL;
DENNIS M. MOLESEVICH; HOULIHAN SMITH; SHELTON SMITH;
SUNTRUST BANKS, INC.; CHERRY BEKAERT AND HOLLAND LLP;
ELLIOT & WARREN; CHESTER J. BANULL,**
*Defendants.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## AT CHARLOTTE

————————

# BRIEF OF APPELLANT

————————

Robert C. Bowers
MOORE & VAN ALLEN, PLLC
100 North Tryon Street
Suite 4700
Charlotte, NC  28202
(704) 331-3560

Adam M. Burton
Karl C. Huth, IV
PROSPECT
  ADMINISTRATION, LLC
10th East 40th Street
45th Floor
New York, NY  10016
(646) 380-1723

*Counsel for Appellant*

*Counsel for Appellant*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street ♦ Suite 230 ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _____     Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____

(name of party/amicus)

_____

 who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.     Is party/amicus a publicly held corporation or other publicly held entity?     YES     NO

2.     Does party/amicus have any parent corporations?     YES     NO
       If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?     YES     NO
       If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?      YES      NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)      YES      NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                      YES      NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____          Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____          _____
(signature)                                                        (date)

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>:

TABLE OF AUTHORITIES ...........................................................................iv

STATEMENT OF JURISDICTION..............................................................1

STATEMENT OF THE ISSUES PRESENTED........................................4

STATEMENT OF THE CASE .....................................................................4

I.  Statement of the Facts .............................................................10

    A.  Background ......................................................................10

    B.  Procedural History .......................................................13

SUMMARY OF ARGUMENT ....................................................................16

ARGUMENT ...................................................................................................20

I.  Standard of Review .....................................................................20

II.  Prospect Adequately Alleged that Houlihan Owed Prospect a
Duty of Care ...................................................................................20

    A.  Prospect Alleged That Houlihan Supplied Information
About ESA to Prospect in Exchange for Compensation
and Therefore Houlihan Owed Prospect a Duty.....................20

        1.  Houlihan Owed Prospect a Duty Under North
Carolina Law ....................................................................20

        2.  Houlihan Owed Prospect a Duty Under New York
Law .....................................................................................22

a.    The SAC Alleges That Houlihan Had Actual Knowledge That Prospect Would Use the Offering Memorandum in Connection With Prospect's Consideration of the ESA Transaction ..................................................... 23

b.    The SAC Adequately Alleges That Prospect Was a "Known Party" .......................................... 24

c.    The SAC Adequately Alleges "Linking Conduct" ................................................................. 25

B.    The District Court Erred in Finding That the Disclaimers in the Offering Memorandum Absolved Houlihan from Liability as a Matter of Law ...................................................... 26

1.    The Boilerplate Disclaimers in the Offering Memorandum Did Not Absolve Houlihan of Liability for Negligence .................................................. 27

2.    The District Court Erred in Ruling That the Disclaimers in the Offering Memorandum Shielded Houlihan from Liability, Despite the SAC's Allegation that Houlihan "Purposefully Ignored" that ESA Could Not Support the False Statements in the Offering Memorandum ...................... 28

3.    The District Court Erred in Ruling That the Disclaimers in the Offering Memorandum Shielded Houlihan from Liability for False Statements Made Outside the Text of the Offering Memorandum .................................................................. 30

III.    The District Court Erred in Finding No Justifiable Reliance as a Matter of Law ...................................................................... 31

IV.    The SAC Adequately Pleads Falsity ................................................ 32

V.      Whether Houlihan Exercised "Due Care" Cannot Be Resolved
        as a Matter of Law...................................................................33

VI.     In the Alternative, Prospect Should Be Granted Leave to
        Amend ......................................................................................34

        A.      The District Court Had Never Previously Considered
                Prospect's Negligent Misrepresentation Claim Against
                Houlihan..........................................................................34

        B.      Amendment Would Not Be Futile ...........................................35

CONCLUSION ...................................................................................36

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

<u>**TABLE OF AUTHORITIES**</u>

<u>**PAGE(S):**</u>

<u>**CASES:**</u>

*Andrews v. Fitzgerald*,
    823 F. Supp. 356 (M.D.N.C. 1993) ...................................................17, 19, 28

*Anwar v. Fairfield Greenwich Ltd.*,
    728 F. Supp. 2d 372 (S.D.N.Y. 2010) .......................................................23, 24

*Ballance v. Rinehart*,
    105 N.C. App. 203, 412 S.E.2d 106 (N.C. App. 1992)................................21

*Barger v. McCoy Hillard & Parks*,
    346 N.C. 650, 488 S.E.2d 215 (1997) ...........................................7, 31, 32

*Campbell v. Bender*,
    No. 3:09:CV:465, 2011 WL 3882722 (W.D.N.C. Sept. 2, 2011)...........21, 27

*Commercial Union Ins. Co. v. Blue Water Yacht Club Ass'n*,
    289 F. Supp. 2d 337 (E.D.N.Y. 2003)......................................................19, 29

*Credit Alliance Corp. v. Arthur Andersen & Co.*,
    65 N.Y.2d 536, 483 N.E.2d 110 (1985) .................................................*passim*

*Freese v. Smith*,
    110 N.C. App. 28, 428 S.E.2d 841 (N.C. App. 1993).................................30

*Goodwyn v. Siemens Dematic Corp.*,
    No. 2:03-CV-43-BO(1),
    2004 WL 6039455 (E.D.N.C. July 21, 2004)........................................19, 35

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*,
    134 S. Ct. 1744, 188 L. Ed. 2d 829 (2014)...................................................20

*Island Creek Coal Co. v. Lake Shore, Inc.*,
    832 F.2d 274 (4th Cir. 1987) .................................................................19, 35

*Jefferson-Pilot Life Ins. Co. v. Spencer*,
    336 N.C. 49, 442 S.E.2d 316 (1994) ...........................................................21

*Jones v. Sears Roebuck & Co.*,
301 F. App'x 276 (4th Cir. 2008)..................................................20

*Kidd v. Havens*,
171 A.D.2d 336, 577 N.Y.S.2d 989 (4th Dep't 1991) ..................24

*Liberty Fin. Co. v. BDO Seidman*,
123 N.C. App. 515, 473 S.E.2d 13 (N.C. App. 1996).........................*passim*

*Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP*,
350 N.C. 214, 513 S.E.2d 320 (1999) .....................................18, 33

*Proctor v. Metro. Money Store Corp.*,
645 F. Supp. 2d 464 (D. Md. 2009)...............................................30

*Prudential Ins. Co. of Am. v. Dewey, Ballantine, Bushby, Palmer & Wood*,
80 N.Y.2d 377, 605 N.E.2d 318 (1992) .......................................23

*Raritan River Steel Co. v. Cherry, Bekaert & Holland*,
322 N.C. 200, 367 S.E.2d 609 (1988) ........................... 4-5, 16, 21

*Ross v. Tennessee Commercial Warehouse, Inc.*,
No. 3:14-CV-00391-FDW,
2014 WL 4672424 (W.D.N.C. Sept. 18, 2014)...........................29

*Sawyer v. Food Lion, Inc.*,
144 N.C. App. 398, 549 S.E.2d 867 (N.C. App. 2001)................29

*Sec. Investor Prot. Corp. v. BDO Seidman, LLP*,
222 F.3d 63 (2d Cir. 2000) .....................................................24, 25

*Thomas H. Lee Equity Fund V v. Grant Thornton LLP*,
586 F. Supp. 2d 119 (S.D.N.Y. 2008) ....................................31-32

*Trulock v. Freeh*,
275 F.3d 391 (4th Cir. 2001) .......................................................20

*United States v. Singh*,
518 F.3d 236 (4th Cir. 2008) .......................................................36

**STATUTES:**

28 U.S.C. § 1291 ..................................................................................3

28 U.S.C. § 1332 ..................................................................................2

28 U.S.C. § 1404(a) .........................................................................2, 14

**RULES:**

Fed. R. Civ. P. 8(a)(2) ......................................................................30

Fed. R. Civ. P. 9(b) ..........................................................................30

Fed. R. Civ. P. 12(b)(3) ....................................................................14

Fed. R. Civ. P. 12(b)(6) ...........................................................2, 14, 27

Fed. R. Civ. P. 15(a)(2) ................................................................*passim*

**OTHER:**

Restatement (Second) of Contracts § 195 (1981) ....................................29

Restatement (Second) of Torts § 552 (1977) ................................5, 16, 21

## STATEMENT OF JURISDICTION

Appellant Prospect Capital Corporation ("Prospect") filed this action against Houlihan Smith & Associates, Inc.[1] ("Houlihan") and other defendants for their roles in a fraudulent scheme that induced Prospect to loan more than $12 million to ESA Environmental Specialists, Inc. ("ESA"). (A 102-114[2]) ESA hired Houlihan to secure sources of financing for ESA. (A 177) At the time Houlihan was marketing ESA as a financially healthy company, ESA was meeting with its bankruptcy attorney to prepare to file for bankruptcy. (A 103; A 107) Houlihan prepared a confidential offering memorandum (the "Offering Memorandum") and other documents containing false financial information about ESA. (A 105-07; A 175-97) The Offering Memorandum overstated ESA's earnings by $5 million. (A 107) ESA wrote to Houlihan that ESA was "undercapitalized and choking". (A 235) Houlihan "purposefully ignored" that ESA's financial statements were unsupportable. (A 107) With gross negligence or intentional wrongdoing, Houlihan sent Prospect the false Offering Memorandum and other false financial data, which presented ESA as a profitable company, not an "undercapitalized and choking" company on the verge of implosion. Houlihan communicated with

---

[1] Prospect acknowledges that Houlihan has filed an opposition to Prospect's Supplemental Notice of Appeal and annexed exhibits. Prospect reserves the right to file an amended brief if the Court grants Houlihan's objection.

[2] Citations to the Joint Appendix are denoted "(A _)".

Prospect about those documents on more than a dozen occasions. (A 105-06)

Prospect relied on the documents Houlihan created and provided in making its

decision to extend a loan to ESA, and Prospect communicated with Houlihan

principals directly in connection with its due diligence work. (A 106-07)

Houlihan charged and collected from Prospect $350,000 in connection with

Houlihan's role in the ESA transaction and another $50,000 in fees connected with

a related transaction. (A 107) Less than four months after Prospect extended the

loan to ESA, ESA declared bankruptcy. (A 114)

Jurisdiction in the lower court was proper pursuant to 28 U.S.C. § 1332.

Prospect originally filed this diversity action in the U.S. District Court for the

Southern District of New York. On December 21, 2009, the Southern District of

New York transferred the proceedings to the U.S. District Court for the Western

District of North Carolina (the "District Court") pursuant to 28 U.S.C. § 1404(a).

(A 78-79)

On January 25, 2012, Houlihan moved to dismiss the complaint for failure to

state a claim under Federal Rule of Civil Procedure 12(b)(6) (the "Motion to

Dismiss"). (Doc. 68; *see* A 56) The District Court held no hearing on Houlihan's

Motion to Dismiss and referred the Motion to Dismiss to Magistrate Judge David

Keesler (the "Magistrate Judge"). (A 96; *see* A 198) After the parties briefed the

Motion to Dismiss, the Magistrate Judge recommended that the District Court

grant the Motion to Dismiss in a Memorandum and Recommendation dated September 27, 2012 (the "M&R").  (A 198; A 206)  Prospect timely filed an objection to the M&R (the "Objection to the M&R"), and the parties fully briefed the Objection to the M&R.  (Docs. 111, 113, 114; *see* A 60-61)  The District Court denied the Objection to the M&R, adopted and affirmed the findings in the M&R, and granted the Motion to Dismiss in an order filed December 11, 2012 (the "Order").  (A 221)  The District Court took the additional step of dismissing the complaint with prejudice and denying Prospect leave to amend its complaint, finding that, although there was no proposed amended complaint before the District Court and although the District Court had never before considered Prospect's claims against Houlihan or Houlihan's disclaimer defense, any amendment would be futile.  (A 221 n.2)

Prospect litigated its claims against the remaining defendants.  This action was resolved as to all remaining defendants on August 22, 2014, the date on which the Order became final and appealable under 28 U.S.C. § 1291.  (Docs. 170, 171; *see* A 66)  Prospect timely filed its Notice of Appeal of the Order on September 17, 2014.  (Doc. 171; *see* A 66)  Accordingly, this court has jurisdiction to hear the appeal.

3

## STATEMENT OF THE ISSUES PRESENTED

1.    Whether the District Court erred in ruling that Houlihan had no duty to impart correct and truthful information to Prospect in Houlihan's communications to Prospect concerning ESA.

2.    Whether the District Court erred in finding that Prospect did not sufficiently plead justifiable reliance on Houlihan's misrepresentations.

3.    Whether the District Court erred in finding that Prospect did not sufficiently plead that Houlihan provided false information to Prospect.

4.    Whether the District Court erred in finding that Prospect did not sufficiently plead that Houlihan failed to exercise reasonable care in providing false information to Prospect.

5.    Whether the District Court erred in dismissing Prospect's claims with prejudice without leave to amend, although there was no proposed amended complaint before the District Court and although the District Court had never before considered Prospect's claims against Houlihan.

## STATEMENT OF THE CASE

Under North Carolina law, all persons who supply information to guide others in their business transactions in exchange for compensation have a duty to exercise reasonable care or competence in both (1) obtaining this business information and (2) communicating this information to other persons. *Raritan*

4

*River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 213-16, 367 S.E.2d 609, 617-18 (1988); Restatement (Second) of Torts § 552 (1977). Prospect's Second Amended Complaint (the "SAC") alleges that Houlihan supplied information about ESA in the form of (i) the Offering Memorandum, which Houlihan created, (ii) other diligence materials that Houlihan created, and (iii) more than a dozen other communications with Prospect about ESA and the opportunity to invest in ESA. (A 105-06 (SAC ¶¶ 43, 46-49)) The SAC further alleges that Houlihan charged $350,000 in fees for supplying information about ESA to Prospect. (A 107 (SAC ¶¶ 53-53)) Accordingly, Houlihan had a duty to Prospect to exercise reasonable care and competence in obtaining information about ESA and in communicating the information about ESA. The District Court erred in finding otherwise and dismissing Prospect's negligent misrepresentation claim against Houlihan.[3]

The District Court based its finding that Houlihan had no duty to Prospect as a matter of law on boilerplate disclaimers in the Offering Memorandum. (A 219-220) There is no such rule of law. *Liberty Fin. Co. v. BDO Seidman*, 123 N.C. App. 515, 517, 473 S.E.2d 13, 14 (N.C. App. 1996) (finding that complaint stated claim although disclaimers stated that "the report provided no opinion on the

---

[3] Prospect concedes that the District Court did not err in dismissing Prospect's professional negligence claim against Houlihan.

5

accuracy of the [financial] statements and contained a disclaimer detailing the limited scope of the report".).  Nor should there be.  Houlihan charged hundreds of thousands of dollars to provide to Prospect false information about ESA, a company that was on the verge of financial collapse the entire time Houlihan was attempting to convince Prospect to loan ESA more than $12 million.  The sole purpose of Houlihan's communications with Prospect was to induce Prospect to loan money to ESA, and the Offering Memorandum says as much: "[t]his Offering presents to institutional investors a compelling opportunity to invest in an exceptional management team building a market-leading, multi-million dollar national contract management company."  (A 179)  Payment of Houlihan's fee was contingent on the closing of the transaction.  (A 107 (SAC ¶ 54); A 120-21 (SAC ¶¶ 140, 142))  From ESA's perspective, Houlihan apparently earned its fee, as Houlihan's communications with Prospect successfully persuaded Prospect to invest millions into a fraudulent enterprise that would be out of business within four months.  Without Houlihan's imprimatur of credibility (Houlihan's name appears on every page of the Offering Memorandum), ESA never would have had a chance.  (A 176-97)  Houlihan cannot profit from its role in advancing ESA's fraudulent scheme by hiding behind boilerplate disclaimers in the Offering Memorandum.

Even if the disclaimers protected Houlihan from ordinary negligence in connection with the statements in the Offering Memorandum, the disclaimers did not and could not absolve Houlihan of liability for gross negligence or willful misstatements or for statements contained in communications outside the Offering Memorandum. Houlihan knew that ESA was "undercapitalized and choking," in the words of ESA principal Charles Cole. (A 235) The SAC alleges that Houlihan "either *purposefully* ignored or negligently failed to detect the fact that ESA Management was unable to support many of the representations contained in the Offering Memorandum" and prepared and supplied the Offering Memorandum and other false information to Prospect with a "reckless disregard for the truth". (A 107 (SAC ¶ 58); A 120 (SAC ¶ 137)) The SAC also alleges that Houlihan provided additional false and misleading information to Prospect and communicated with Prospect on a dozen occasions to discuss such information. (A 105-06 (SAC ¶¶ 45-49)) The District Court erred in finding that the disclaimers in the Offering Memorandum completely shielded Houlihan from the consequences of its negligence, including grossly negligent communications and negligent communications outside the text of the Offering Memorandum. *See e.g., Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 655, 662, 488 S.E.2d 215, 217, 222 (1997) (allowing negligent misrepresentation claims to proceed against accountant who "met periodically with plaintiff to explain . . . financial statements").

7

The District Court also erred in finding that the disclaimers in the Offering Memorandum rendered Prospect's reliance on the financial data provided in the Offering Memorandum unreasonable as a matter of law. (A 208; A 221) Whether Prospect's reliance was reasonable is an issue of fact that cannot be resolved on a motion to dismiss. *Liberty Fin.*, 123 N.C. App. at 518, 473 S.E.2d at 15 (rejecting defendant's argument that disclaimer rendered plaintiff's reliance unreasonable as a matter of law: "We conclude that the issue of whether plaintiff justifiably relied on the financial statements prepared by defendant should not be dismissed, as a matter of law, at th[e motion to dismiss] stage of the proceedings.").

In addition, the District Court erred in dismissing Prospect's claims with prejudice, with no possibility for leave to amend. (A 221 n. 2) Rule 15(a)(2) provides that "amendment should be liberally granted". The District Court found that Prospect failed to correct pleading deficiencies "despite specific direction from this court on how to resolve such problem". (A 221 n. 2) But the District Court had never previously considered Prospect's claims against Houlihan or Houlihan's disclaimer defense. The District Court based its dismissal of the Prospect's negligent misrepresentation claim almost entirely on the existence of the disclaimers. (A 217-221) The District Court never gave Prospect "specific direction" on how to resolve any pleading deficiencies with respect to Prospect's

8

claims against Houlihan or with respect to Houlihan's disclaimer defense.[4]  Nor

was there any proposed amended complaint before the District Court, and therefore

no opportunity for the District Court to determine whether any amendments would

be futile.  Amendment would not be futile.  Although the District Court dismissed

Houlihan before permitting Prospect to take discovery from Houlihan, discovery in

related litigation revealed that Houlihan knew that ESA was "undercapitalized and

choking", as ESA's chief executive officer Charles Cole wrote in a desperate email

to Jay Rodgers of Houlihan on March 10, 2007 (when Prospect was performing

diligence on ESA)[5]:

> Jay, I don't want to waste alot of time on this but this prick lied in that
> letter and see his ridiculous responses.  They blamed us for delays,
> delays, that took a set of balls.  Trust me, he blind copied that letter to
> Jeff Yoh our mutual friend.  They sent the letter, expected me to drop
> everything and run to CBH and Jay the truth is I am slammed with
> work, we have the KIOSK deal to review now, the va is dragging us
> all over the country and **we sit here undercapatialized [sic] and
> choking** because of their breeched agreement?  They reference the

---

[4] The only instruction the District Court gave with respect to negligent
misrepresentation claims in general was that "the court will be looking in particular
for plausible factual allegations that ASA [i.e., a different defendant] provided
false information, not just that it supplied incomplete, inaccurate, or negligently
gathered information."  (A 94)  As discussed above, the SAC alleges that the
Offering Memorandum "falsely represented ESA's financial condition on a
number of material areas, including that ESA had EBITDA in 2006 over $1.9
million", overstating ESA's EBITDA by $5 million.  (A 107 (SAC ¶¶ 51-52); A
120 (SAC ¶¶ 135-36))

[5] ESA attempted to destroy this and other incriminating emails.  (A 222-223)
Prospect hired a data recovery vendor while litigating a related case, who was able
to recover some of the destroyed evidence.  (*Id.*)

9

wrong company and thats [sic] irrelevant because we gave them
fincial [sic] data?????  anyone will understand it?????  WHAT?

(A 235)  Prospect requests that, if this Court affirms dismissal of the SAC, the

Court remand the case and instruct the District Court to permit Prospect to file a

motion to amend pursuant to FRCP 15(a)(2).

## I.   Statement of the Facts

### A.   Background

At the time Houlihan was marketing the ESA opportunity to Prospect, ESA

was on the verge of bankruptcy and could not pay bills submitted by its vendors

and sub-contractors, as a February 2007 email from Jacob Cole (Charles Cole's

brother) to ESA's managers shows:

> Let me propose something so we are not doing a lot of work for
> nothing. **Charles meet with [bankruptcy counsel] Tom Moon
> Monday.  Ask him about the liability with sending out post dated
> checks**.  He will say that there could be a liability involved and if you
> don't have to you should not, but I don't know that we have a choice
> right now.  I am not even certain that will stop a bunch of claims, but
> it may be our best shot.  Assuming we go that route, we get out
> checks.  **These will hold off most of the subs till the end of the
> month and demonstrate our commitment to pay them**.  It will also
> alleviate the calls and other nonsense and free us to focus on getting
> the investors all that they need.  **Also, it allows us to focus on getting
> money in to make payroll and our bills until the end of the month**.
> …
>
> **What I am trying to do is bridge the time between now and then
> with nothing**.  Granted this exposes us with the checks, but **hopefully
> it fights off claims through the due diligence period and keeps
> people at bay.** …

The bottom line is that it would be easy if we had no investor right now because the path would be clear.

However, **because we have an investor still on the table we need to try to juggle both balls (investor and [Chapter] 11) until the end of the month.** At least that is my read on what you want Charles. If I am wrong correct me.

(A 224) Houlihan knew that ESA was in dire financial straits. **Charles Cole wrote to Jay Rodgers of Houlihan that ESA was "undercapitalized and choking**." But Houlihan told a completely different story in the Offering Memorandum:

This Offering presents to institutional investors a compelling opportunity to invest in an exceptional management team building a market-leading, multi-million dollar national contract management company, ESA Environmental Specialists, Inc., a Texas Regular C Corporation ("ESA" or "the Company") to enable ESA to acquire Lisamarie Fallon Inc., dba The Healing Staff, a Texas Subchapter S Corporation ("THS" or "the Target"). ESA is seeking $15 million to fund the acquisition, refinance current debt and increase working capital for bonding purposes.

(A 179) The Offering Memorandum falsely represented ESA's true financial condition. (A 107 (SAC ¶¶ 51-52); A 120 (SAC ¶¶ 135-36)) The Offering Memorandum reported that ESA's Earnings Before Interest, Taxes, Depreciation and Amortization ("EBITDA"), a key measure of a company's financial performance, was approximately $2 million in 2006. (A 107 (SAC ¶¶ 51-52); A 120 (SAC ¶¶ 135-36)) In reality, ESA's EBITDA for 2006 was negative $3

11

million.  (*See* A 107 (SAC ¶¶ 51-52); A 120 (SAC ¶¶ 135-36)) **The Houlihan**

**Offering Memorandum overstated ESA's EBITDA by $5 million**.

After providing Prospect with the Offering Memorandum, Houlihan had

numerous communications with Prospect about ESA and ESA's financial

performance.  (A 105-06 (SAC ¶¶ 45-49))  Specifically, Jay Rodgers of Houlihan

contacted Eric Klaussmann of Prospect to discuss ESA's financial performance by

telephone and/or e-mail on several occasions including, but not limited to, the

following dates: January 31, 2007, February 5, 2007, February 14, 2007, February

15, 2007, February 28, 2007, March 5, 2007, March 7, 2007, March 12, 2007,

March 14, 2007, April 9, 2007, April 10, 2007 and April 12, 2007.  (A 106 (SAC ¶

46)  In addition, Jay Rodgers of Houlihan met with John F. Barry III, CEO of

Prospect in New York on or about February 13, 2007, to discuss the ESA

investment opportunity presented in the Offering Memorandum.  (A 106 (SAC ¶

47))  Rodgers then provided updated financials to Prospect via email.  (*Id*.)

While the disclaimers in the Offering Memorandum assert that "[n]either

Houlihan nor any of its affiliates has independently verified any of the information

and data contained herein" (A 176), such assertions were either false or admissions

of gross negligence.  Houlihan knew that ESA was "undercapitalized and

choking", as ESA's Charles Cole wrote in an email to Houlihan's Jay Rodgers on

March 10, 2007.  (A 235)  Needless to say, neither ESA nor Houlihan told

Prospect that ESA was "undercapitalized and choking". At all times, ESA and Houlihan represented the ESA investment opportunity as "a compelling opportunity to invest in an exceptional management team" as stated in the Offering Memorandum. (A 179) Prospect proceeded to loan $12.2 million to ESA on April 11, 2007, in reliance upon the financial data and communications concerning ESA that Houlihan provided to Prospect. (A 110 (SAC ¶ 75); A 107 (SAC ¶ 57)) At closing, Houlihan received from Prospect $350,000 from the ESA transaction and an additional $50,000 in a related transaction. (A 107 (SAC ¶¶53-54))

Less than 3 months later, Prospect discovered that ESA had overstated its earnings by $5 million. (A 113-114 (SAC ¶¶ 98-99)) On August 1, 2007, less than four months after Prospect extended the original loan, ESA filed a petition under Chapter 11 of the Bankruptcy Code, and the company has since been liquidated, resulting in millions of dollars of losses to Prospect. (A 114 (SAC ¶ 100))

## B. **Procedural History**

Prospect filed this action against Houlihan and other defendants in the U.S. District Court for the Southern District of New York (the "Southern District of New York") on January 28, 2009. (Doc. 1 (*see* A 13)) On February 11, 2009, before any defendant had responded to the complaint, Prospect filed an amended complaint (the "First Amended Complaint"), which alleged one count of negligence against

13

Houlihan.  (Doc. 4 (*see* A 13))  Houlihan moved to dismiss for failure to state a claim pursuant to FRCP 12(b)(6) and made no objection to the other defendants' motion to dismiss for improper venue under FRCP 12(b)(3), or in the alternative to transfer under 28 U.S.C. § 1404(a).  (Doc. 56 (*see* A 21-22); A 69, 77-78)  On December 21, 2009, the Southern District of New York transferred the remaining causes of action against all defendants to the U.S District Court for the Western District of North Carolina.  (A 78-79)  In the order transferring the action, the Southern District found that "the locus of operative facts is in North Carolina".  (A 78)

After the transfer, the District Court permitted the defendants to file supplemental memoranda in support of their motions to dismiss, but Houlihan declined to do so.  (A 85)  On July 21, 2011, the District Court heard argument on the defendants' motions to dismiss.  (A 81)  The District Court did not, however, consider Houlihan's motion to dismiss the First Amended Complaint at the hearing because Houlihan was not represented by local counsel.  (A 81)  On September 2, 2011, the District Court granted the motion to dismiss with respect to defendants Cherry Bekaert & Holland LLP ("Cherry Bekaert") and Elliot & Warren for lack of subject matter jurisdiction.[6]  (A 96)  The District Court denied all other defendants' motions to dismiss.  (*Id*.)  The District Court did not address

---

[6] Prospect tried its case against Cherry Bekaert to a jury in the Superior Court of Mecklenburg County, North Carolina.  The jury found that Cherry Bekaert made negligent misrepresentations to Prospect and awarded Prospect close to $5 million (including interest) against Cherry Bekaert.  (A 240-42)

14

Houlihan's motion to dismiss other than to deny it.  (*See* A 80-96)  The Court

granted Prospect leave to amend its complaint.  (A 96)

Prospect filed the SAC on October 14, 2011.  (A 98, A172)  The SAC

alleged two claims against Houlihan, professional negligence and negligent

misrepresentation.  (A 118-121)  On January 25, 2012, Houlihan filed the Motion

to Dismiss with supporting papers.  (Doc. 68 (*see* A 56))  On February 13, 2012,

Prospect filed a brief and supporting papers in opposition to the Motion to Dismiss.

(Doc. 77 (*see* A 56))  Houlihan filed reply papers on February 23, 2012.  (Doc. 80

(*see* A 57))  The District Court referred the Motion to Dismiss to the Magistrate

Judge.  (*See* A 96, 198)  On September 27, 2012, the Magistrate Judge found in the

M&R that the SAC did not sufficiently allege that (i) Houlihan supplied false

statements to Prospect, (ii) Prospect's reliance on Houlihan's statements was

reasonable, given the disclaimers in the Offering Memorandum, and (iii) Houlihan

failed to exercise reasonable care or competence in obtaining or communicating

the information.  (A 208)  The Magistrate Judge recommended that the District

Court grant the Motion to Dismiss.  (A 209-09)

Prospect timely filed an objection to the M&R on October 11, 2012.  (Doc.

111 (*see* A 60))  Houlihan filed a response to the objection on October 29, 2012,

and Prospect filed a reply on November 16, 2012.  (Docs. 113 and 114 (*see* A 61))

In the Order filed on December 11, 2012, the District Court affirmed and adopted

the M&R.  (A 221)  The District Court also found that amendment of Prospect's claims would be futile and declined to grant leave to amend under FRCP 15(a)(2).  (A 221 n. 2)  The District Court dismissed the claims pleaded in the SAC with prejudice.  (A 221)

Pursuant to the Local Rules and by order of the District Court, discovery was stayed with respect to the remaining defendants until June 2014.  (Doc. 127 (*see* A 62))  The case resolved as to all remaining defendants on August 20, 2014.  (Doc. 170 (*see* A 66))  Prospect timely filed its Notice of Appeal on September 17, 2014.  (A 228)

## SUMMARY OF ARGUMENT

The District Court erred in ruling that the SAC failed to adequately plead (i) duty, (ii) reasonable reliance, (iii) falsity, and (iv) breach.

*First*, all persons who supply information to guide others in their business transactions in exchange for compensation have a duty to exercise reasonable care or competence in both (1) obtaining this business information and (2) communicating this information to other persons.  *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 213-16, 367 S.E.2d 609, 617-18 (1988); Restatement (Second) of Torts § 552 (1977).  The SAC alleges that Houlihan supplied information about ESA to Prospect in the Offering Memorandum and through more than a dozen other communications with Prospect.  (A 105-06 (SAC

16

¶¶ 43, 46-49))  The SAC alleges that Houlihan provided such information to Prospect for the purpose of inducing Prospect to invest in ESA, and that Houlihan received $350,000 in compensation for its services.  (A 120-21 (SAC ¶¶ 138-42)) The general disclaimers in the Offering Memorandum are not sufficient to absolve Houlihan of all liability for obtaining and transmitting fraudulent financial data to Prospect.  *Liberty Fin. Co. v. BDO Seidman*, 123 N.C. App. 515, 517, 473 S.E.2d 13, 14 (N.C. App. 1996).  The SAC alleges that Houlihan "either *purposefully* ignored or negligently failed to detect the fact that ESA Management was unable to support many of the representations contained in the Offering Memorandum" and that Houlihan acted with "acted with reckless disregard to the truth".  (A 107 (SAC ¶ 58), A 120 (SAC ¶ 137)) (emphasis added)  The disclaimers in the Offering Memorandum cannot protect Houlihan from gross negligence.  *Andrews v. Fitzgerald*, 823 F. Supp. 356, 379 (M.D.N.C. 1993) ("[I]f Plaintiffs can prove that Defendants acted in a grossly negligent manner, Plaintiffs' claims for negligent misrepresentation will not be barred by the exculpation clause.").

*Second*, the District Court erred in finding that the SAC did not adequately plead reasonable reliance as a matter of law.  The Magistrate Judge and the District Court gave no other reasons for this finding other than the effect of disclaimers in the Offering Memorandum.  (A 203-205, 208, 222)  Disclaimers like the ones in

17

the Offering Memorandum do not preclude reasonable reliance as a matter of law. *Liberty Fin.*, 123 N.C. App. at 518.

*Third*, the District Court erred in adopting the finding of the Magistrate Judge that the SAC did not allege that any of the statements Houlihan supplied were false. (A 206, 222) The SAC alleges that the Offering Memorandum falsely represented that ESA had EBITDA in 2006 of over $1.9 million, when in fact ESA's EBITDA for 2006 represented a loss of nearly $3 million – an egregious discrepancy of nearly $5 million. (A 120 (SAC ¶¶ 135-36))

*Fourth*, the District Court erred to the extent it found that the SAC did not allege that Houlihan failed to exercise reasonable care. In negligent misrepresentation cases, "[w]hat is reasonable is, as in other cases of negligence, dependent upon the circumstances. It is, in general, a matter of the care and competence that the recipient of the information is entitled to expect in the light of the circumstances and this will vary according to a good many factors. *The question is one for the jury, unless the facts are so clear as to permit only one conclusion*." *Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP*, 350 N.C. 214, 225, 513 S.E.2d 320, 327 (1999) (citation omitted) (emphasis in original).

In the alternative, the District Court erred when it dismissed Prospect's claims with prejudice and with no opportunity to amend. "The court should freely give leave when justice so requires." FRCP 15(a)(2). The District Court denied

leave on the ground of futility on the basis of the disclaimers in the Offering
Memorandum and on the mistaken basis that Prospect failed to correct a pleading
deficiency despite having been given specific instructions on how to do so.  (A 221
n. 2)  In fact, the District Court had never considered Prospect's negligent
misrepresentation claim against Houlihan or Houlihan's disclaimer defense until
the District Court dismissed the SAC.  Nor would amendment be futile.  "With
respect to futility, plaintiffs 'do not have to prove all of the elements of their
proposed count; it is sufficient that they demonstrate that there is some plausible
basis in the record for their claim.'" *Goodwyn v. Siemens Dematic Corp*., No. 2:03-
CV-43-BO(1), 2004 WL 6039455, at *7 (E.D.N.C. July 21, 2004), *quoting Island
Creek Coal Co. v. Lake Shore, Inc*., 832 F.2d 274, 280 (4th Cir. 1987).  Prospect
can and, if given the chance, will allege additional facts showing that Houlihan
knew ESA was in poor financial condition, but represented to Prospect that ESA
was a profitable company.  Houlihan's disclaimers cannot protect Houlihan from
liability for reckless, grossly negligent or intentionally harmful acts.  *Andrews*, 823
F. Supp. at 379; *Commercial Union Ins. Co. v. Blue Water Yacht Club Ass'n*, 289
F. Supp. 2d 337, 340 (E.D.N.Y. 2003).

# ARGUMENT

## I.    Standard of Review

This Court reviews a grant of a motion to dismiss de novo. *Trulock v. Freeh*, 275 F.3d 391, 399 (4th Cir. 2001) ("Because the district court granted Defendants' motion to dismiss, our review is de novo."). "Like the district court, [the appellate court] must assume all facts pled by Appellants to be true." *Id.*

The Fourth Circuit reviews "for abuse of discretion a district court's denial of a motion for reconsideration or a request for leave to amend." *Jones v. Sears Roebuck & Co.*, 301 F. App'x 276, 281 (4th Cir. 2008). "The abuse-of-discretion standard does not preclude an appellate court's correction of a district court's legal or factual error: 'A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748, 188 L. Ed. 2d 829 (2014).

## II.    Prospect Adequately Alleged that Houlihan Owed Prospect a Duty of Care

### A.    Prospect Alleged That Houlihan Supplied Information About ESA to Prospect in Exchange for Compensation and Therefore Houlihan Owed Prospect a Duty

#### 1.    Houlihan Owed Prospect a Duty Under North Carolina Law

Under North Carolina law, all persons who supply information to guide others in their business transactions in exchange for compensation have a duty to

exercise reasonable care or competence in both (1) obtaining this business

information and (2) communicating this information to other persons. *Raritan*

*River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 213-16, 367 S.E.2d

609, 617-18 (1988); Restatement (Second) of Torts § 552 (1977). The law does not

limit the scope of the duty to accountants or auditors; rather, the law applies to any

"[o]ne who [like Houlihan] supplies false information for the guidance of others in

their business transactions". *Campbell v. Bender*, No. 3:09:CV:465, 2011 WL

3882722, at *8 (W.D.N.C. Sept. 2, 2011) (citing *Raritan*, 322 N.C. at 209); *see

also, e.g., Jefferson-Pilot Life Ins. Co. v. Spencer*, 336 N.C. 49, 53-56, 442 S.E.2d

316, 318-19 (1994) (applying section 552 to insurance company); *Ballance v.

Rinehart*, 105 N.C. App. 203, 207, 412 S.E.2d 106, 109 (N.C. App. 1992)

(applying Section 552 to appraiser).  The SAC alleges facts sufficient to show that

Houlihan owed Prospect a duty to exercise reasonable care in obtaining business

information about ESA and in communicating information about ESA to Prospect:

- Houlihan created the Offering Memorandum "in the course of [its] business, profession or employment", provided it to Prospect, and engaged in a protracted series of communications with Prospect designed to convince Prospect to loan money to ESA.  (A 106-07 (SAC ¶¶ 46-47, 56-57))

- Houlihan plainly "ha[d] a pecuniary interest" in the transaction, receiving $350,000 in fees for its work in connection with the ESA placement and $50,000 for a related transaction. (A 107 (SAC ¶ 54))

21

- Houlihan provided its Offering Memorandum to Prospect for the purpose of enticing Prospect to make its loan to ESA and secure Houlihan a lucrative transaction fee. (A 106-07 (SAC ¶¶ 46-47, 54, 56-57))

- Houlihan communicated with Prospect on more than a dozen occasions concerning ESA and provided additional information about ESA to Prospect.  (A 105-06 (SAC ¶¶ 45-49))

Accordingly, Houlihan owed Prospect a duty of care under North Carolina law.

## 2.    Houlihan Owed Prospect a Duty Under New York Law

The District Court did not determine that New York law applied, but the result is the same whether New York or North Carolina law applies.   In its papers supporting the Motion to Dismiss, Houlihan identified the *Credit Alliance* standard as the proper standard to determine whether Houlihan owed Prospect a duty. Under the *Credit Alliance* standard, in order to impose negligence liability on a professional for injury to a non-contracting third party resulting from the professional's advice or services, the third party must establish that the professional and third party had a relationship approaching privity by showing the following three elements: (1) the professional must have been aware that the advice or services were to be used for a particular purpose or purposes; (2) in the furtherance of which a known party or parties was intended to rely; and (3) there must have been some conduct on the part of the professional linking him or her to that party or parties, which evinces the professional's understanding of that party's or parties' reliance. *Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d

536, 551, 483 N.E.2d 110, 118 (1985).  The SAC adequately alleges a duty under

*Credit Alliance*.

> **a.**   **The SAC Alleges That Houlihan Had Actual Knowledge That Prospect Would Use the Offering Memorandum in Connection With Prospect's Consideration of the ESA Transaction**

To satisfy the first element of the *Credit Alliance* test, Prospect need only

allege that Houlihan had actual knowledge of how the information provided by

Houlihan would be used by prospective investors.  *Prudential Ins. Co. of Am. v.*

*Dewey, Ballantine, Bushby, Palmer & Wood*, 80 N.Y.2d 377, 385, 605 N.E.2d 318,

322 (1992) ("[I]t is undisputed that Gilmartin was well aware that the opinion letter

which U.S. Lines directed it to prepare was to be used by Prudential in deciding

whether to permit the debt restructuring.  Thus, the end and aim of the opinion

letter was to provide Prudential with the financial information it required."); *Anwar*

*v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 433 (S.D.N.Y. 2010) (first

element satisfied where plaintiff shows that accountants "had actual knowledge of

how the information provided by them would be used by prospective, as well as

current, investors").  The first page of the Offering Memorandum states that "[t]he

information contained in the [Offering Memorandum] is … to be used only in

connection with the recipient's consideration of a participation in the transaction

referenced herein."  (A 176)  The SAC alleges that Houlihan knew through more

than a dozen communications with Prospect that Prospect would use the Offering

Memorandum and other information in evaluating the ESA transaction.  (A 105-06

(SAC ¶¶ 45-49); A 120 (SAC ¶¶ 138-40)  Accordingly, the SAC adequately pleads

that first *Credit Alliance* element.

> **b.    The SAC Adequately Alleges That Prospect Was a "Known Party"**

The second *Credit Alliance* element requires that plaintiff be a "known

party" intended to rely upon the Offering Memorandum.  To qualify as a "known

party, the plaintiff must be "part of an identifiable, particularized group rather than

'a faceless or unresolved class of persons.'"  *Sec. Investor Prot. Corp. v. BDO*

*Seidman, LLP*, 222 F.3d 63, 74 (2d Cir. 2000).  The "known" party element

requires only that the plaintiff belongs to a "fixed, definite and identifiable" class.

*Anwar*, 728 F. Supp. 2d at 456 ("The 'known parties' prong of the Credit Alliance

test does not require an auditor know a 'particular' third party by name.  Rather it

recognizes that while a [professional] does not owe a duty to members of an

'indeterminate class', a [professional] owes a duty to 'members of a settled and

particularized class among the members of which the report would be

circulated.'") (internal citations and punctuation omitted); *Kidd v. Havens*, 171

A.D.2d 336, 339, 577 N.Y.S.2d 989, 991 (4th Dep't 1991) (where a defendant does

not know the relying party by name at the time the misstatement was made, "the

courts have been willing to impose liability upon defendants where, in the context

of a particular transaction, the potential plaintiff or class of plaintiffs is fixed,

24

definite, and identifiable"). Here, the SAC alleges that Houlihan knew that the Offering Memorandum was sent directly and specifically to Prospect. (A 105-06 (SAC ¶ 45-49; A 120 (SAC ¶¶ 138-40)). Prospect was not "a faceless or unresolved class of persons" that received the Offering Memorandum through happenstance, without Houlihan's knowledge or consent. *BDO Seidman, LLP*, 222 F.3d at 74.

The Offering Memorandum was not an audit prepared in the ordinary course of business. Rather, it was a document that Houlihan prepared *specifically* for potential investors in ESA with ESA's "exclusive mandate for the placement", and Houlihan's job was to bring the ESA investment opportunity to potential investors. (A 182, 232) Accordingly, Houlihan controlled which potential investors received the Offering Memorandum, and the policy underlying *Credit Alliance*'s limitation on liability--protecting professionals from liability "in an indeterminate amount for an indeterminate time to an indeterminate class"--is not even remotely implicated. *See Credit Alliance*, 65 N.Y.2d at 548.

### c.    The SAC Adequately Alleges "Linking Conduct"

"To demonstrate linking conduct, a plaintiff generally must show some form of direct contact between the accountant and the plaintiff, such as a face-to-face conversation, the sharing of documents, or other 'substantive communication' between the parties." *BDO Seidman*, 222 F.3d at 75. Here, the SAC alleges that

Houlihan communicated with Prospect on more than a dozen occasions concerning ESA and ESA's financial performance.  (A 105-06 (SAC ¶¶ 45-49))  The facts here are analogous to those in *European American Bank & Trust Co. v. Staruhs & Kaye*, the companion case to *Credit Alliance*, in which the New York Court of Appeals found that the complaint adequately alleged "linking conduct":

> It is unambiguously claimed that the parties remained in direct communication, both orally and, indeed, met together throughout the course of EAB's lending relationship with Majestic Electro, for the very purpose of discussing the latter's financial condition and EAB's need for S & K's evaluation. … The parties' direct communications and personal meetings resulted in a nexus between them sufficiently approaching privity … to permit EAB's causes of action.

*Credit Alliance*, 65 N.Y.2d at 554.  As in *European American*, the SAC adequately alleges "linking conduct".

### B. The District Court Erred in Finding That the Disclaimers in the Offering Memorandum Absolved Houlihan from Liability as a Matter of Law

The District Court based its ruling that Houlihan did not owe Prospect a duty solely on the existence of disclaimers in the Offering Memorandum.  (*See* A 210-221)  The District Court erred because (i) boilerplate disclaimers do not preclude duties as a matter of law, (ii) the SAC alleges that Houlihan purposefully ignored the errors in the Offering Memorandum, and disclaimers cannot exculpate liability for gross negligence or intentional misconduct, and (iii) the disclaimers do not

exculpate Houlihan for liability for false statements and omissions made to

Prospect outside the text of the Offering Memorandum.

### 1.    The Boilerplate Disclaimers in the Offering Memorandum Did Not Absolve Houlihan of Liability for Negligence

The District Court erroneously found that "the disclaimer language of the

Offering Memorandum clearly indicate [sic] that Houlihan Smith had no duty to

Prospect" as a matter of law.  (A 219)  Whether disclaimers exculpate a duty is a

question of fact that should not be resolved on a motion to dismiss.  *Liberty Fin.*

*Co. v. BDO Seidman*, 123 N.C. App. 515, 517, 473 S.E.2d 13, 14 (N.C. App. 1996)

(finding that complaint stated claim although disclaimers stated that "the report

provided no opinion on the accuracy of the [financial] statements and contained a

disclaimer detailing the limited scope of the report").  The existence of boilerplate

disclaimers does not provide grounds for dismissal under Rule 12(b)(6) where, as

here, the effect of the disclaimers on the defendant's duty, and the plaintiff's

reliance on the statements, are contested issues of fact.  *Id*.

Houlihan's role in the ESA transaction indisputably was to supply

information "for the guidance of others [including Prospect] in business

transactions".  *Campbell*, 2011 WL 3882722, at *8.  Houlihan played a major role

in the transaction; indeed, the Offering Memorandum states that "Houlihan Smith

& Co., Inc. will assist ESA, and has ESA's exclusive mandate for the placement".

(A 182)  Houlihan received $400,000 as a success fee in connection with the ESA

loan and a related transaction. (A 107 (SAC ¶ 54)) But Houlihan argued, and the District Court accepted, that by larding its Offering Memorandum with boilerplate disclaimers, Houlihan effectively supplied no reliable information to anyone at all. (A 217) If Houlihan's argument were taken at face value, then it would seem that Houlihan pulled off a remarkable heist when it collected hundreds of thousands of dollars in return for generating a document with no business value whatsoever.

The SAC alleges a much more mundane (and plausible) set of facts: that Houlihan was retained to supply information to Prospect and others, that Houlihan supplied false information to Prospect (both via the Offering Memorandum and in direct communications with Prospect), and that Prospect justifiably relied on that information to its detriment.

> **2.     The District Court Erred in Ruling That the Disclaimers in the Offering Memorandum Shielded Houlihan from Liability, Despite the SAC's Allegation that Houlihan "Purposefully Ignored" that ESA Could Not Support the False Statements in the Offering Memorandum**

Even if the boilerplate disclaimers protected Houlihan from liability for negligently supplying false statements in the Offering Memorandum, disclaimers cannot protect Houlihan from liability for gross negligence or purposeful misconduct. *See Andrews v. Fitzgerald*, 823 F. Supp. 356, 379 (M.D.N.C. 1993) ("[I]f Plaintiffs can prove that Defendants acted in a grossly negligent manner, Plaintiffs' claims for negligent misrepresentation will not be barred by the

exculpation clause."); *Commercial Union Ins. Co. v. Blue Water Yacht Club Ass'n*, 289 F. Supp. 2d 337, 340 (E.D.N.Y. 2003) ("[A]n agreement will not be enforced if it purports to exempt liability for willful or grossly negligent acts or where a special relationship exists between the parties so that an overriding public interest renders the exculpatory clause unenforceable."); Restatement (Second) of Contracts § 195 (1981) ("A term exempting a party from tort liability for harm caused intentionally or recklessly is unenforceable on grounds of public policy."). "Gross negligence encompasses conduct which lies somewhere between ordinary negligence and intentional conduct." *Sawyer v. Food Lion, Inc*., 144 N.C. App. 398, 403, 549 S.E.2d 867, 870 (N.C. App. 2001) (internal citations omitted); *Ross v. Tennessee Commercial Warehouse, Inc.*, No. 3:14-CV-00391-FDW, 2014 WL 4672424, at *2 (W.D.N.C. Sept. 18, 2014) (same).

The SAC alleges that Houlihan "*purposefully* ignored" that ESA overstated its financial performance in the Offering Memorandum and prepared and supplied the Offering Memorandum and other false information to Prospect with a "reckless disregard for the truth".  (A 107 (SAC ¶ 58) (emphasis added); A 120 (SAC ¶ 137))  The SAC further alleges that Houlihan knew that Prospect would rely upon the false statements in the Offering Memorandum and in other communications. (A 105-06 (SAC ¶¶ 45-49); A 120-21 (SAC ¶¶ 138-42))  Accordingly, the SAC alleges facts constituting gross negligence or intentional misconduct by Houlihan,

29

and the disclaimers cannot insulate Houlihan from grossly negligent or intentional misconduct. Houlihan had a duty not to conceal its knowledge of ESA's true financial performance in the Offering Memorandum. *See, e.g., Freese v. Smith*, 110 N.C. App. 28, 35, 428 S.E.2d 841, 846 (N.C. App. 1993) ("[E]ven if there is no duty to disclose information, if a seller does speak then he must make a full and fair disclosure of the matters he discloses.").

Houlihan had both the financial motive and the opportunity to willfully "look the other way" in its efforts to market ESA.[7] The District Court erred when it ruled that the disclaimers in the Offering Memorandum conclusively foreclosed Prospect's claims, notwithstanding the allegations in the SAC that Houlihan consciously, purposefully and recklessly included unsupportable and false financial information in the Offering Memorandum that Houlihan created and distributed.

### 3. The District Court Erred in Ruling That the Disclaimers in the Offering Memorandum Shielded Houlihan from Liability for False Statements Made Outside the Text of the Offering Memorandum

The District Court erred when it ignored the fact that Houlihan's wrongdoing goes far beyond the four corners of the Offering Memorandum.

---

[7] Prospect is not required to plead gross negligence under a heightened pleading standard. *See Proctor v. Metro. Money Store Corp.*, 645 F. Supp. 2d 464, 490 (D. Md. 2009) ("A tort claim for negligence, including gross negligence, is subject to the general pleading standard of Rule 8(a)(2), not the heightened 'plead with particularity' standard associated with fraud allegations required under Rule 9(b).").

30

Houlihan communicated directly with Prospect on more than a dozen occasions. (A 105-6 (SAC ¶¶ 45-49))  Those communications did not include the same disclaimers set forth in the Offering Memorandum.  Accordingly, even if Houlihan's disclaimers absolved Houlihan of liability arising from the Offering Memorandum -- and they did not -- Houlihan's telephone and email communications with Prospect, in which Houlihan provided additional information, would still provide the basis for claims of negligence and negligent misrepresentation.  *See Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 655, 662, 488 S.E.2d 215, 217, 222 (1997) (allowing negligent misrepresentation claims to proceed against accountant who "met periodically with plaintiff to explain . . . financial statements").

## III.    The District Court Erred in Finding No Justifiable Reliance as a Matter of Law

The District Court erred when it ruled that the disclaimers in the Offering Memorandum rendered Prospect's reliance unreasonable as a matter of law.  At best, the disclaimers created a question of fact as to whether Prospect's reliance on information in the Offering Memorandum was reasonable.  *Liberty Fin.*, 123 N.C. App. at 518, 473 S.E.2d at 15 (rejecting defendant's argument that disclaimer rendered plaintiff's reliance unreasonable as a matter of law: "We conclude that the issue of whether plaintiff justifiably relied on the financial statements prepared by defendant should not be dismissed, as a matter of law, at th[e motion to dismiss] stage of the proceedings."); *Thomas H. Lee Equity Fund V v. Grant Thornton LLP*,

31

586 F. Supp. 2d 119, 134 (S.D.N.Y. 2008) ("The language in the Letters

cautioning plaintiffs that GT's audit work … 'should not be taken to supplant' their

own inquiries is not a disclaimer of reliance, much less an express disclaimer

necessary to render plaintiffs' reliance unreasonable as a matter of law.").  That is

especially true here, where Houlihan communicated with Prospect more than a

dozen times about ESA and the Offering Memorandum in an attempt to induce

Prospect to invest in ESA.  (A 105-06 (SAC ¶¶ 43, 46-49)); *Barger v. McCoy*

*Hillard & Parks*, 346 N.C. 650, 655, 662, 488 S.E.2d 215, 217, 222 (1997)

(allowing negligent misrepresentation claims to proceed against accountant who

"met periodically with plaintiff to explain . . . financial statements").

## IV.    The SAC Adequately Pleads Falsity

The Magistrate Judge found that the SAC did not adequately plead that

Houlihan supplied false statements.  (A 206)  The District Court did not expressly

uphold this finding, but adopted and affirmed the M&R in its entirety.  (A 221)

The SAC alleges that the Offering Memorandum "falsely represented ESA's

financial condition on a number of material areas, including that ESA had

EBITDA in 2006 over $1.9 million", overstating ESA's EBITDA by $5 million.

(A 107 (SAC ¶¶ 51-52); A 120 (SAC ¶¶ 135-36))  Thus, the SAC clearly alleges

that Houlihan supplied false statements.

**V.    Whether Houlihan Exercised "Due Care" Cannot Be Resolved as a Matter of Law**

The Magistrate Judge found that the SAC did not adequately allege that "Houlihan failed to exercise reasonable care or competence in obtaining or communicating the information." (A 208) The District Court adopted and affirmed the M&R, but also "agree[d] with Prospect that determining whether a defendant's professional acts met a level of reasonable care and competence is subjective and therefore a jury question when the issue is properly presented to a jury." (A 218) If the District Court intended to find that the SAC should not be dismissed for failure to plead breach, then Prospect assigns no error. If the District Court intended to find that Prospect inadequately pleaded breach, then the District Court erred, as the level of "reasonable care and competence" required of Houlihan is a jury question and should not be resolved at the motion to dismiss stage. In negligent misrepresentation cases, "[w]hat is reasonable is, as in other cases of negligence, dependent upon the circumstances. It is, in general, a matter of the care and competence that the recipient of the information is entitled to expect in the light of the circumstances and this will vary according to a good many factors. *The question is one for the jury, unless the facts are so clear as to permit only one conclusion*." *Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP*, 350 N.C. 214, 225, 513 S.E.2d 320, 327 (1999) (citation omitted) (emphasis in original).

## VI.    In the Alternative, Prospect Should Be Granted Leave to Amend

"The court should freely give leave when justice so requires."  FRCP

15(a)(2).  Here, justice requires amendment.  Discovery in related litigation has

revealed that Houlihan knew that ESA was "undercapitalized and choking".

(A 235)  Houlihan knew of ESA's true financial condition, but nonetheless

prepared, disseminated and never retracted a marketing document for ESA

falsely representing that ESA was a thriving company on the upswing.   (A

179, 194-96)

The District Court erroneously dismissed the SAC with prejudice and

without leave to amend.  In so ordering, the District Court found that (i) "there

have been repeated failure [sic] to correct the deficiency despite specific direction

from this court on how to resolve such problem, as pointed out by the magistrate

judge in his M&R", and (ii) amendment would be futile.  (A 221 n. 2)  Both

findings were mistaken.

### A.    The District Court Had Never Previously Considered Prospect's
Negligent Misrepresentation Claim Against Houlihan

The District Court dismissed Prospect's claims against Houlihan solely on

the basis that the disclaimers in the Offering Memorandum precluded Prospect

from adequately pleading that Houlihan owed Prospect a duty of care.  But the first

time the District Court addressed Houlihan's argument that the disclaimers

precluded a finding of duty was on the Motion to Dismiss.  Thus, the District

34

Court's statement that "there have been repeated failure [sic] to correct the deficiency despite specific direction from this court on how to resolve such problem, as pointed out by the magistrate judge in his M&R" was clearly erroneous.  In fact, the only instruction the District Court gave with respect to negligent misrepresentation claim in general was that "the court will be looking in particular for plausible factual allegations that ASA provided false information, not just that it supplied incomplete, inaccurate, or negligently gathered information."  (A 94)  As discussed above, the SAC alleges that the Offering Memorandum "falsely represented ESA's financial condition on a number of material areas, including that ESA had EBITDA in 2006 over $1.9 million", overstating ESA's EBITDA by $5 million.  (A 107 (SAC ¶¶ 51-52); A 120 (SAC ¶¶ 135-36))

### B.    Amendment Would Not Be Futile

The District Court erred in finding that the disclaimers in the Offering Memorandum rendered any amendment futile.  "With respect to futility, plaintiffs 'do not have to prove all of the elements of their proposed count; it is sufficient that they demonstrate that there is some plausible basis in the record for their claim.'"  *Goodwyn v. Siemens Dematic Corp.*, No. 2:03-CV-43-BO(1), 2004 WL 6039455, at *7 (E.D.N.C. July 21, 2004) (*quoting Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 280 (4th Cir. 1987)).  As discussed, the disclaimers in

35

the Offering Memorandum do not absolve Houlihan for gross negligence or intentional misconduct.  (*Supra* at 28-30)  The District Court's finding that the disclaimers necessarily defeated any duty as a matter of law under all possible circumstances was an error of law and therefore an abuse of discretion.  *See United States v. Singh*, 518 F.3d 236, 251 (4th Cir. 2008) ("The court made an error of law—thereby abusing its discretion—in concluding, during the July 22, 2005 status conference, that an independent contractor instruction should have been given to the jury.").

## <u>CONCLUSION</u>

For the reasons stated above, Prospect respectfully requests that the Court reverse and vacate the Order, and grant all such other relief that is proper, or, in the alternative, reverse and remand with instructions to grant Prospect leave to amend.

Respectfully submitted, this 9th day of January 2015.

/s/ Adam M. Burton
Adam M. Burton
Karl C. Huth, IV
PROSPECT ADMINISTRATION, LLC
10th East 40th Street, 45th Floor
New York, NY  10016

Robert C. Bowers
MOORE & VAN ALLEN, PLLC
100 North Tryon Street, Suite 4700
Charlotte, NC  28202

*Counsel for Appellant*

36

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**
**Certificate of Compliance with Type-Volume Limitation,**
**Typeface Requirements, and Type Style Requirements**

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

>   this brief contains <u>8,537</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

>   this brief has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.


January 9, 2015                          <u>/s/ Adam M. Burton</u>
                                         Adam M. Burton
                                         Karl C. Huth, IV
                                         PROSPECT ADMINISTRATION, LLC
                                         10th East 40th Street, 45th Floor
                                         New York, NY  10016

                                         Robert C. Bowers
                                         MOORE & VAN ALLEN, PLLC
                                         100 North Tryon Street, Suite 4700
                                         Charlotte, NC  28202

                                         *Counsel for Appellant*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on January 9, 2015, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF System, which will send notice of such

filing to the following registered CM/ECF users:

> Richard P. Drake
> DUANE MORRIS, LLP
> 190 South LaSalle Street
> Suite 3700
> Chicago, IL  60603
> (312) 499-6743

> *Counsel for Appellee*

The necessary filing and service were performed in accordance with the

instructions given to me by counsel in this case.

> /s/ Shelly N. Gannon
> Shelly N. Gannon
> GIBSON MOORE APPELLATE SERVICES, LLC
> 421 East Franklin Street, Suite 230
> Richmond, VA  23219